## UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

EDUARDO ZUBIA-MARTINEZ, JR.,

    Plaintiff,

    v.

J.R. BELL, *Warden*,

    Defendant.

Civil Action No. TDC-20-0301

## MEMORANDUM OPINION

Petitioner Eduardo Zubia-Martinez, Jr., a federal inmate currently confined at the Federal Correctional Institution ("FCI") in Cumberland, Maryland ("FCI-Cumberland"), has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 in which he seeks to challenge the computation of his violence classification score, which is used to determine his security level within the Federal Bureau of Prisons ("the BOP"). For the reasons set forth below, the Petition will be DENIED.

## BACKGROUND

In 2015, Zubia-Martinez was convicted in the United States District Court for the Eastern District of Tennessee of Conspiracy to Distribute 500g or More of Methamphetamine. On October 8, 2015, he received a sentence of 300 months of imprisonment, which was later amended to 160 months, followed by 10 years of supervised release. Zubia-Martinez was committed to the custody of the BOP on November 17, 2015, and his current projected release date is November 25, 2025, assuming that he receives all good conduct credits available to him. In 2010, prior to his federal conviction, Zubia-Martinez was convicted in state court on the charge of simple battery.

In his Petition, Zubia-Martinez asserts one ground for relief. He states that prior to being transferred to FCI-Cumberland, two different BOP facilities gave him a lower violence rating, making him eligible for housing in a lower security facility. Specifically, he states that on December 5, 2017, FCI-Pollack scored his "custody and classification level of violence at a three (3) minor," and on August 22, 2018, FCI-Bennettsville scored his "custody and classification level of violence at a three (3) minor as well." Pet. at 6, ECF No. 1. He was transferred to FCI-Cumberland on January 8, 2019. Upon transfer, FCI-Cumberland scored Zubia-Martinez's level of violence as a six, which made him "ineligible for a low security facility." *Id.* at 7. Zubia-Martinez argues that the higher classification, which he asserts was based on the same information available to the other two BOP facilities, was improper, and he asks this Court to "reverse[] the Federal [BOP] decision and return his custody classification for violence back down to a three (3) minor" so that he is once again eligible for housing in a lower-security facility. *Id.* at 8. In support of his position that his violence rating should have been lower, Zubia-Martinez includes, among other exhibits, an affidavit from the purported victim in the 2010 battery case asserting that Zubia-Martinez "never scratched and/or hit" her and that she "overreacted." Pet. Ex. 1 at 5, ECF No. 1-1.

In the Answer to the Petition, Respondent has submitted a declaration from Jonathan Winebrenner, Zubia-Martinez's case manager at FCI-Cumberland, explaining how BOP violence ratings and housing classifications are determined. Winebrenner states that pursuant to BOP Program Statement ("P.S.") 5100.08, Inmate Security Designation and Custody Classification, the BOP is responsible for determining where an offender will serve his or her sentence. Original security classifications and housing decisions are made by the Designation and Sentence Computation Center by determining the inmate's security point score. "This score is calculated

2

by taking into account a number of factors, including the inmate's commitment offense, criminal history, institutional adjustment, and public safety." Winebrenner Decl. ¶ 4, Ans. Ex. 1, ECF No. 5-1. After initial classification, the inmate's custody classification is re-scored after approximately seven months, with subsequent reviews occurring at least every 12 months. As part of that determination, an inmate's history of violence is assessed based on "those acts for which there are documented findings of guilt." *Id.* ¶ 5. Severity of the violence is also considered and is "determined by the offense behavior regardless of the conviction/finding of guilt." *Id.* Recency of prior violent incidents is also considered "to assess the propensity for future violence." *Id.*

Winebrenner states that he assigned a violence score of six to Zubia-Martinez upon his transfer to FCI-Cumberland based in part on the facts of the 2010 battery conviction, as set forth in Zubia-Martinez's pre-sentence investigation report ("PSR"), which included that "police were dispatched to a residence for a domestic situation" where Zubia-Martinez "choked and scratched the victim." *Id.* ¶¶ 7–8. He also notes that "while an inmate may have one score from one institution, that score is subject to change, as '[t]he Unit Team and/or Warden is the final review authority.'" *Id.* ¶ 4.

Although the Court notified Zubia-Martinez of his right to file a Reply to Respondent's Answer, he did not do so.

## DISCUSSION

Respondent argues that the Petition should be dismissed for the following reasons: (1) Zubia-Martinez has not stated a cognizable claim under 28 U.S.C. § 2241; (2) Zubia-Martinez has no constitutional right to a particular security classification or to housing in a particular prison; and (3) even if his claims were properly before the Court, his contention that his violence rating was improperly calculated is without merit.

## I.      Cognizability

Zubia-Martinez seeks federal habeas corpus relief under 28 U.S.C. § 2241.  Under this provision, a district court may consider a petition for a writ of habeas corpus if a prisoner "is in custody under or by color of the authority of the United States" or is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c) (2018).  Zubia-Martinez does not seek immediate release but instead requests that the Court revise his violence rating so that he will be eligible for lower security housing.

In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the United States Supreme Court held that when a "prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500.  However, the Supreme Court has distinguished between "[c]hallenges to the validity of any confinement or to particulars affecting its duration," which are the province of habeas corpus, and "[a]n inmate's challenge to the circumstances of his confinement," which ordinarily are to be pursued through a civil action under 42 U.S.C. § 1983. *Hill v. McDonough*, 547 U.S. 573, 579 (2006).

In *Wilborn v. Mansukhani*, 795 F. App'x 157, 163 (4th Cir. 2019), the United States Court of Appeals for the Fourth Circuit held that a challenge to definitions in BOP Program Statements asserted in order to determine an inmate's classification for purposes of housing designation was not a claim that could be asserted through a habeas petition under § 2241. *Id.* at 164.  The petitioner in *Wilborn*, who was serving a 240-month sentence for conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, filed a § 2241 petition alleging that the BOP P.S. 5100.08 definition of "history of violence" was unconstitutionally vague and sought an injunction barring reliance on that definition and reconsideration of his housing designation. *Id.*

4

at 161, 164. Although an unpublished opinion that is not binding on this Court, *Wilborn* squarely addresses the threshold question of whether § 2241 is the proper vehicle for a federal inmate to challenge the issues underlying the determination of the inmate's classification within the BOP as it relates to "where he will be detained[.]" *Id.* at 162. Here, Zubia-Martinez seeks to challenge only his classification, in order to be eligible for lower security housing, not the fact of or duration of his incarceration. Under *Wilborn*, his claim is not cognizable under § 2241 and must be dismissed.

## II. Constitutional Claim

Even if the Court could consider this habeas petition, or construe it as a claim of unconstitutional conditions of confinement under 42 U.S.C § 1983, Zubia-Martinez's claim does not provide a basis to conclude that he is "in custody in violation of the Constitution or laws . . . of the United States," 28 U.S.C. § 2241(c), or subjected to a deprivation of rights under "the Constitution and laws" of the United States, 42 U.S.C. § 1983. Zubia-Martinez's claim that he should be reclassified so that he can be eligible for a lower security facility fails because prisoners ordinarily do not have a constitutional right to be housed in one prison or another, or one type of prison or another. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Id.*; *see also Sandin v. Conner*, 515 U.S. 472, 486 (1995) (requiring that a particular placement, such as in segregation, impose an atypical and significant deprivation on the inmate in order to create a constitutionally protected liberty interest). The Constitution does not guarantee that an inmate will be placed in any particular prison, nor does it protect an inmate from transfer from one institution to another within a state

5

prison system. *Meachum*, 427 U.S. at 224–25. Here, where Zubia-Martinez's objection to FCI-Cumberland's assessment of his violence rating is aimed at receiving a lower security classification and a different prison placement, his challenge does not assert a valid constitutional claim and fails as a matter of law. The court therefore need not address the merits of the specific classification determination at issue.

## III.    Certificate of Appealability

In certain circumstances set forth by statute, a federal habeas petitioner may not appeal the final order on a petition without first having received a certificate of appealability. 28 U.S.C. § 2253(c). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing *Miller-El v. Cockerell*, 537 U.S. 322, 336 (2003)). To the extent such a certificate is required here, the Court finds that the legal standard for issuance of a certificate of appealability has not been met and thus declines to issue one.

### CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus will be denied and a certificate of appealability shall not issue. A separate Order shall issue.

Date:  January 11, 2023

THEODORE D. CHUANG
United States District Judge